**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MARK JAMES ASAY,

        Petitioner,

v.                                    Case No. 3:05-cv-147-J-32PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.
_____

## ORDER (Execution Set for August 24, 2017)

### I. Status / Parties' Positions

In 1988, Petitioner was convicted of two counts of first degree murder.[1] The jury recommended a death sentence for each conviction by a nine-to-three vote, and the trial court imposed a sentence of death for each conviction. Petitioner previously filed a federal habeas corpus petition that this Court denied on the merits on April 14, 2014. See Order (Doc. 152). Petitioner appealed the judgment but voluntarily dismissed the appeal prior to the Eleventh Circuit issuing a decision. See Order of United States Court of Appeals for the Eleventh Circuit (Doc. 157).

---

[1] The victims were Robert Lee Booker and Robert McDowell.

On July 3, 2017, the Governor set Petitioner's execution for August 24, 2017.[2] Petitioner has since filed in this Court two successive habeas petitions. See Order (Doc. 164), No. 3:05-cv-147-J-32PDB (Aug. 14, 2017) (construing a Rule 60(b) motion as a successive habeas petition and dismissing it without prejudice for lack of jurisdiction); Order (Doc. 23), No. 3:16-cv-43-J-32JRK (July 31, 2017) (finding a habeas petition to be successive and dismissing it without prejudice for lack of jurisdiction).

On August 20, 2017, Petitioner filed in the instant case a Motion for Relief from the Judgment pursuant to Rule 60(b)(6) (Doc. 165) (Motion). Petitioner bases his argument on a statement made by the Florida Supreme Court in its August 14, 2017 opinion, that the second murder victim (McDowell) "may have been either white or mixed-race, Hispanic but was not a black man." Asay v. State, Nos. SC17-1400, SC17-1429, 2017 WL 3472836, at *1 (Fla. Aug. 14, 2017). At bottom, his argument is this. On direct appeal, the Florida Supreme Court referred to the second victim (McDowell) as "a black man dressed as a woman." Asay v. State, 580 So. 2d 610, 611 (Fla. 1991). Then, in summary fashion, the Florida Supreme Court found "no merit" in Petitioner's claim that "the trial court erred by allowing racial prejudice to be injected into the trial." Id. at 612 n.1. During collateral proceedings, the court again referred to McDowell as a "black man" and affirmed the trial court's denial of Petitioner's claim that his counsel was "ineffective for failing to rebut the

---

[2] The Governor signed the death warrant for both death sentences on January 8, 2016, and the execution was originally scheduled for March 17, 2016. Pending the result of some state court proceedings, the Florida Supreme Court stayed the execution from March 2, 2016, to February 1, 2017. After the stay was lifted, but during the pendency of Petitioner's petition for writ of certiorari in the United States Supreme Court, see Asay v. Florida, No. 16-9033 (filed Apr. 29, 2017), the Governor reset the execution for August 24, 2017. The petition for writ of certiorari remains pending.

2

State's arguments that he committed the crime due to his racial animus." Asay v. State, 769 So. 2d 974, 976, 984-85 (Fla. 2000). Now, ten days before Petitioner's scheduled execution, the Florida Supreme Court has acknowledged it was in error concerning the race of Mr. McDowell.

In his original habeas petition in this Court, Petitioner presented as Ground VI the following claim:

> A FAIR TRIAL MUST BE A RACE NEUTRAL TRIAL. HERE THERE WAS EVIDENCE THAT THE FIRST VICTIM WAS A BLACK MALE BUT THE SECOND VICTIM WAS CLEARLY A[] HISPANIC MALE. ALTHOUGH MUCH DISCUSSION IS HAD WITH REGARD TO RACE-NEUTRAL JURIES, HERE THE PERVASIVE NATURE OF THE RACIAL EVIDENCE AND ARGUMENT OVERWHELMED AND TAINTED THE TRIAL PROCESS. EVEN THOUGH THE PROSECUTION WAS PERMITTED TO INTERJECT RACE INTO THE PROSECUTION, MR. ASAY WAS FORBIDDEN FROM REFUTING THIS ACCUSATION OF RACISM.

Petition (Doc. 8) at 56. Petitioner also raised a claim of ineffective assistance of trial counsel for failing to call witnesses to prove that he was not a racist or to refute evidence of Petitioner's racism presented by the State. See Order (Doc. 152) at 24. In denying the petition on the merits, this Court found that the Florida Supreme Court's decision affirming the denial of Petitioner's postconviction motion and the decision affirming his direct appeal were both entitled to deference under the Antiterrorism and Effective Death Penalty Act (AEDPA). See id. at 24-33, 45. Specifically, regarding the ineffective assistance of counsel claim, the Court quoted the trial court and Florida Supreme Court decisions before applying AEDPA deference. See id. at 24-33. As to Ground VI, the Court found:

> Petitioner asserts that he was denied a fair trial when racial evidence and argument tainted the trial process. The Florida Supreme Court summarily found this claim to have "no merit." Asay v. State, 580 So. 2d 610, 612 n.1 (Fla. 1991). Thus, there is a qualifying decision under [the Antiterrorism and Effective Death Penalty Act].
>
> Upon thorough review of the record and the applicable law, this Court concludes that the Florida Supreme Court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Petitioner is not entitled to relief on ground six.

Order (Doc. 152) at 45 (citations modified and omitted) (footnotes omitted). In a footnote, the Court recognized that "[t]he State's theory of the case was that the murders were motivated by Petitioner's hatred of African-Americans. As noted by Respondents, the United States Supreme Court has never held that it is a violation of the right to a fair trial for the State to present its motive even when that motive is racial." Id. at 45 n.50 (citation omitted).

Petitioner now claims that the Florida Supreme Court's factual error regarding McDowell's race led to a "defect" in the integrity of the federal habeas proceedings. He contends that this Court deferred to the Florida Supreme Court's factual finding that McDowell was black in adjudicating Petitioner's original federal habeas petition. Now that the Florida Supreme Court has corrected its factual error, Petitioner urges this Court to reopen its judgment.

Respondents filed a response requesting that the Motion be denied. See Response to 60(b)(6) Motion to Reopen (Doc. 169). Respondents argue that there are no extraordinary

circumstances that warrant reopening this case and alternatively address the merits of Petitioner's claims.

Petitioner filed a Reply (Doc. 171) (Reply) citing to specific portions of the record where McDowell was referred to as black, and again urges the Court to reopen this case for further proceedings.

## **II. Analysis**

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

> Rule 60(b) vests wide discretion in courts, but [the United States Supreme Court has] held that relief under Rule 60(b)(6) is available only in "extraordinary circumstances." Gonzalez v. Crosby, 545 U.S. 524, 535 (2005). In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863-864 (1988).

Buck v. Davis, 137 S. Ct. 759, 777-78 (2017) (internal citations modified).

When a court is faced with a Rule 60(b) motion in a habeas corpus case, it must determine whether the motion is properly filed under Rule 60 or whether the motion is actually a successive habeas petition. This is so because, pursuant to AEDPA, a district court lacks jurisdiction to consider a successive habeas petition without prior authorization from the court of appeals. See 28 U.S.C. § 2244(b)(3)(A).[3] "When, as is the case here, a

---

[3] This Court has an obligation to evaluate its subject matter jurisdiction even if the parties do not address it. Boone v. Sec'y, Dep't of Corr., 377 F.3d 1315, 1316 (11th Cir. 2004) ("We

5

federal habeas court has already reached and resolved the merits of a habeas petitioner's earlier asserted claims, [the court] look[s] at a [Rule] 60(b) motion challenging that decision with particular skepticism." Franqui v. Florida, 638 F.3d 1368, 1371 (11th Cir. 2011).

Indeed, "a habeas petitioner filing a [Rule] 60(b) motion should be held to the standards of section 2244(b) if his motion contains a 'claim' as the term is used in that section—that is, 'an asserted federal basis for relief from a state court's judgment of conviction.'" Id. (quoting Gonzalez v. Crosby, 545 U.S. 524, 530 (2005)). "A motion can . . . be said to bring a 'claim' if it attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." Gonzalez, 545 U.S. at 532 (footnote omitted).

> The term "on the merits" has multiple usages. We refer here to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d). When a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim. He is not doing so when he merely asserts that a previous ruling which precluded a merits determination was in error-for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.

Id. at 532 n.4 (emphasis added) (citation omitted).

Since Petitioner's execution was scheduled, this Court has spent considerable time reviewing the files in this Court and others, twice ruling that Petitioner's request for relief was

---

are obligated to raise questions concerning our subject matter jurisdiction sua sponte in all cases." (citation omitted)).

a successive petition. Likewise, the Court is doubtful whether this Motion presents a defect, such that Rule 60(b)(6) relief is available, as opposed to actually being a successive petition. Nevertheless, the Court cannot rule out that, in the unique situation presented, the Florida Supreme Court's acknowledgment that it erred in identifying the race of one of the victims, could constitute an "extraordinary circumstance" within the meaning of Rule 60(b)(6). Thus, because Petitioner's execution is imminent and to allow full review of all issues in light of the finality of his sentence, this Court will reach the merits.

On August 18, 2017, Petitioner filed a habeas petition in the Florida Supreme Court that was premised upon the same arguments presented in this Motion. Specifically, he argued that the court relied upon a "false fact" in deciding Petitioner's direct and collateral appeals. On August 21, 2017, a unanimous Florida Supreme Court entered an order citing to its prior decisions regarding Petitioner's convictions and death sentences. The court then denied the petition:

> Asay now petitions this Court for a writ of habeas corpus arguing that he has been denied due process based on the race and ethnicity of one of the victims in this case. Asay's argument is essentially that this Court has now acknowledged that one of the victims [(Robert McDowell)] was not black. However, the racial identity of this victim was thoroughly explored at trial before the jury. <u>While this Court may have mislabeled the racial identity of the victim in its prior opinions, this fact does not negatively affect this Court's final determination.</u> Therefore, Asay has failed to present an argument for which he is entitled to relief.

See Asay v. State, No. SC17-1536, 2017 WL 3586892, at *1 (Fla. Aug. 21, 2017) (emphasis added).

7

AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1260 (11th Cir. 2016) (quotations and citation omitted). When a state court has adjudicated a petitioner's claim on the merits, AEDPA precludes a federal court from granting habeas relief "unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' 28 U.S.C. § 2254(d)(1), or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' id. § 2254(d)(2)." Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013).

The Florida Supreme Court concluded that its final determination of Petitioner's claims (apparently including the two claims regarding racial animus that he presented in the original petition as discussed supra pp. 3-4) would not change based on its factual correction of McDowell's race. The court's previous confusion regarding the race of the second victim likely stemmed from the contradictory testimony, argument, and trial court pronouncements at trial and sentencing. Respondents' exhibits (Doc. 144)[4] reflect several inconsistencies with respect to McDowell's race. At trial, the medical examiner testified that McDowell was "a black male,"[5] Ex. 5 at 431; a homicide detective who investigated the two murders testified

---

[4] These exhibits were not scanned into the Court's electronic case filing system. The citations are to the exhibits as they were tabbed and formatted by Respondents (as shown on the habeas corpus checklist (Doc. 144)).

[5] Petitioner avers that the autopsy report indicated McDowell was a white male. Reply at 6.

8

that both victims were "black males,"[6] id. at 463; and Thomas Gross (Petitioner's cellmate) testified that Petitioner said to him, "I shot them niggers." Id. at 759. However, Charles Curtis Moore, Jr. (a/k/a Danny Moore) testified on recross-examination that McDowell was "a white boy," and that "he's got a tan, Philippine, . . . I don't know what his nationality is, he's white to me," id. at 670-71; and Charlie Moore (a different person) confirmed on cross-examination that McDowell "was known as a white person"; on redirect and further redirect, he said that McDowell was "dark skinned," id. at 696, 713-14, 715. Photographs of McDowell were also admitted into evidence and published to the jury. Id. at 428-35, 438.

In closing arguments, the state argued that the reason for the varying testimony as to why Petitioner killed McDowell was because Petitioner told different stories to different people. See Ex. 8 at 853-54. The prosecutor stated:

> [T]hat's the other issue the defendant brings up when they say the State is . . . trying to get a black/white issue, is that victim number two, Mr. McDowell, is not black. Well, you-all determine that, and you-all determine why he killed him. You-all determine why Mr. McDowell was killed. You-all determine whether he is black or not. You-all determine whether he was killed. I mean, is he dead, or is he not dead?
>
> He told you that to him he appeared black, but if he killed this guy because he thought that guy had ripped him off for some sex, or if he killed him because he ripped him off for some drugs, or if he killed him because he thought the guy was black, I mean, he still killed him no matter whatever one of those reasons you pick, from any one of those three witnesses, this is why the defendant said he killed him.
>
> All we can go on is the facts in this case, what the defendant said he killed him for, that's all we have, we can't

---

[6] Like the medical examiner, Petitioner asserts that the homicide continuation report indicated McDowell was a white male. Reply at 6.

9

> make up stories why he killed him, all we can rely on is what the defendant's own statements are. Number one, he killed him because of the prior sex he got ripped off. And, number two, he killed him because prior marijuana he had ripped him off. And, number three, he killed him because he was black.
>
> He's given all three versions. Maybe he killed them because of all three combinations. Maybe he thought that night this guy was a black person. So don't think maybe this guy isn't black. After all, maybe he looks a little light, maybe he's not as dark as he should be, maybe he's not as dark as Mr. Booker, but people are not all the same shades, some are whiter than others, but don't find this guy didn't kill him because he was white, because he's dead.
>
> Rely on what the defendant said why he killed him, prior sex, prior marijuana rip-off, and prior the fact that he's black. You-all decide. But it just happened to be a coincidence this guy's got a Nazi swastika, SWP, and white power. . . . But the key is here, that he told Mr. Gross when he was talking about the murders, he indicated that's the reason he did it.

Id. at 878-80.

In his final closing argument, Petitioner's counsel stated, "I still submit to you, and you can take pictures back and look at them, that Mr. McDowell would not come under the generic term black." Ex. 9 at 906.

During the penalty phase, the state argued again that Petitioner had varying reasons for killing McDowell–a prior drug deal, a prior sexual encounter, or "the reason he [(Petitioner)] also gave them for it, was the first reason why he killed Mr. Booker." Ex. 14 at 1046. The prosecutor later stated Petitioner had either killed McDowell because of a "prior drug deal" or a "prior sex thing, where the victim took the money and ripped him off." Id. at 1050. After the jury recommended a death sentence on both counts but prior to the judge imposing the two death sentences, the judge permitted Petitioner to say anything he so

10

desired. Petitioner read from a pro se motion for a new trial in which he argued that the trial court erred by "allowing the prosecutor to misinform the jury that the victims . . . were both black" and by allowing the "prosecutor to misinform the jury that the defendant thought [McDowell] was black." Ex. 18 at 1093. In the end, and without addressing Petitioner's concern that the jury was misinformed as to McDowell's race, the trial judge found three aggravating circumstances as to the McDowell murder. In explaining the third aggravating circumstance, the trial judge added to the record confusion as to McDowell's race, stating:

> [T]his crime was committed in a cold, calculated and premeditated manner without any pretense of any moral or legal justification. I think this circumstance carries a great deal of weight, and I think it did with the jury in their recommendation, and it certainly does with me in the sentence I'm about to impose. It's the only instance that I have come across in my career where a defendant committed one premeditated murder, and then drove around for a period of time during which, I think, the average normal human being would go into some state of shock or remorse about the fact that he had shot someone . . . . In this instance, instead of reflecting on it or thinking about it or being upset about it or even trying to get away from it, you proceeded on a course - - without any remorse or any hesitancy and proceeded on a course of selecting <u>a second person of the same race</u> and social circumstances as your first victim, and you proceeded in a cold and calculated manner to execute him, just as you had the first victim. With respect to the second victim, you shot him repeatedly. Apparently you wanted to make sure that you had no risk of him running off after shooting him like the first victim.

Ex. 19 at 1105-06 (emphasis added).[7]

Only ten days before Petitioner's scheduled execution, the Florida Supreme Court acknowledged with "regret" the error as to the race of Mr. McDowell. However, the Florida

---

[7] During the many appellate and collateral proceedings over the years, McDowell was often referred to as being black.

11

Supreme Court then found that the issue of McDowell's race "was thoroughly explored at trial before the jury" and the court's prior "mislabel[ing]" of McDowell's race "does not negatively affect this [c]ourt's final determination." Asay, 2017 WL 3586892, at *1. The court effectively ruled that this error had no impact on its prior rulings regarding Petitioner's convictions and death sentences. Under AEDPA, this Court may not explore that finding anew but must give it substantial deference. This Court concludes that the Florida Supreme Court's decision is not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

It is

**ORDERED:**

1. Petitioner's Motion for Relief from Judgment under Rule 60(b) (Doc. 165) is **DENIED**.

2. Petitioner's Application for a Stay of Execution (Doc. 167) is **DENIED**.

3. While the Court does not want to stand in the way of Petitioner seeking appellate review, the Court must deny a certificate of appealability.[8] However, Petitioner may seek a certificate of appealability from the Eleventh Circuit.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of August, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 8/22
c:
Counsel of Record

---

[8] This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), "or that the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack, 529 U.S. at 484). "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. After consideration of the record as a whole, the Court will deny a certificate of appealability.